IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MIRIAM HYMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-227-SLR |
| | ) | |
| CHILD, INC., | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |

**PRAECIPE TO ATTACH CORRECTED AFFIDAVIT OF ROBBIE MACDONNA HOOSTY TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEFENDANT, CHILD, INC., FOR SUMMARY JUDGMENT**

Defendant, Child, Inc., requests that the attached Corrected Affidavit of Robbie MacDonna Hoosty be appended as Exhibit "B" to the Memorandum of Points and Authorities in Support of Motion of Defendant, Child, Inc., which was previously filed with the Court on September 21, 2007. The corrected portions of the Affidavit are denoted in paragraphs 7 and 12 by underlining.

                                            MARSHALL, DENNEHEY, WARNER,
                                            COLEMAN AND GOGGIN


BY:  */s/ Kevin J. Connors*
            KEVIN J. CONNORS, ESQUIRE (#2135)
            1220 N. Market Street, 5th Floor
            **Wilmington, DE  19801**
            **Attorneys for Defendant, Child, Inc.**

DATED:  September 26, 2007
15/535740.v1

## CORRECTED AFFIDAVIT OF ROBBIE MACDONNA HOOSTY

STATE OF DELAWARE         :
                          : SS.
COUNTY OF NEW CASTLE      :

Robbie MacDonna Hoosty, being duly sworn according to law, states as follows:

1. I am employed by Child, Inc. and I am the director at the Governor Charles L. Terry Jr. Emergency Home for Children and Youth.

2. I am familiar with the allegations contained in plaintiff's Complaint against Child, Inc.

3. Plaintiff, Miriam Hyman, was hired by Child, Inc. to work as a part-time Child/Youth Service Worker at the Governor Charles L. Terry Jr. Emergency Home for Children and Youth beginning on March 23, 2005.

4. Child, Inc. had a written anti-discrimination policy in effect during the time of plaintiff's employment.

5. Plaintiff was hired as an "at will" employee.

6. Child, Inc. had the right to terminate plaintiff from her work at the Governor Charles L. Terry Jr. Emergency Home for Children and Youth after 15 days notice, unless plaintiff was terminated for cause in which case she could be terminated immediately. Plaintiff was discharged on June 3, 2005. She was still within the six (6) month orientation period during which time her performance was being evaluated at the time of her discharge.

7. Plaintiff was not terminated on the basis of race. Indeed, the current resident manager is African American and 73% of the staff is African American. <u>One of the previous directors</u> of Child, Inc.'s Shelter Services was African American. The current director of Child, Inc.'s Specialized Foster Care Services is African American and 80% of the foster care staff is African American. At the time of plaintiff's employment, the director of Specialized Foster Care Services was also African American.

8. Plaintiff was terminated because she wanted to set her work schedule so that it could revolve around her own schedule as an actress. Plaintiff's proposed schedule would require the adjustment of other employees' respective schedules.

9. Plaintiff was terminated also because she missed mandatory staff meetings. Plaintiff was informed that staff meetings were mandatory. These meeting were necessary for staff personnel at Child, Inc. to keep current with information needed to care for and provide services to Child, Inc.'s residents. Plaintiff lost out on valuable information pertaining to Child, Inc. residents, including the white minor male resident whom plaintiff improperly restrained because plaintiff missed a meeting when that individual was discussed. Plaintiff left early and missed one and one-half hours of a mandatory meeting on April 28, 2005. On May 24, 2005,

1

plaintiff advised Child, Inc. that she would not be able to attend future meetings because of her other job. Plaintiff missed a mandatory meeting on 5/24/05 which lasted three (3) hours.

10. Plaintiff was terminated also because she failed to follow instructions and then agreed to instructions and then failed to follow through. For example, plaintiff failed to perform inventory tasks. Part of plaintiff's duties included transporting Child, Inc. residents to school for which tasks plaintiff was provided travel directions. Plaintiff failed to follow clear directions to the Gunning Bedford school and somehow ended up in the state of Maryland without adequate explanation. Plaintiff was given verbal directions on numerous occasions about her performance and attitude. Plaintiff was difficult to supervise. Plaintiff would not address her immediate supervisor directly. Plaintiff was extremely defensive and had a hard time listening to what supervisors had to say. Plaintiff projected her own values onto residents. For example, plaintiff was advised that a particular resident might not work through an issue in a timely manner that suited plaintiff, plaintiff wanted the resident to put his past issues aside and be able to act the way plaintiff wanted him to act because of her own past.

11. Plaintiff was terminated because her unauthorized restraint of a minor child resident with emotional problems contravened Child, Inc. policies which were communicated to plaintiff during the employment interview process, in mandatory training and which she agreed to in writing. The minor child resident appeared terrified of plaintiff.

Plaintiff appeared to be picking on the resident by refusing to wash his clothes, which contravened Child, Inc.'s policy of requiring plaintiff and other similarly situated to wash residents' clothing, which policy was recorded in meeting minutes.

12. The incident involving a white minor male resident and plaintiff was different than the incident involving Child, Inc. employee, Clayton, who is white, and an Hispanic minor female resident. Plaintiff desired to press charges against the white minor resident, but Child, Inc. did not want plaintiff to press those charges because plaintiff herself handled the incident inappropriately by restraining the white minor male resident in contravention of Child, Inc. policy and because the white minor male resident had emotional problems and his conduct on the date of the incident between plaintiff and him could and should have been addressed more appropriately without the use of physical restraint and contact but rather by patience and discussion between plaintiff and the white minor male resident. The white minor male resident did not exhibit threatening or assaultive behavior, but simply did not wish to take his medicine.

13. The incident involving Child, Inc. employee Clayton, a white female, and a minor Hispanic female resident, the minor resident had long standing behavioral problems which included combative and threatening behavior. During the incident in question, the Hispanic minor female resident threatened Clayton and affirmatively assaulted her. The Hispanic female minor resident had been sent to Child, Inc. on a "no tolerance" basis and had previously been involved with Youth Rehabilitation Services. During the incident in question, the police were called because of the minor Hispanic female resident's behavior and it was determined that she needed to be removed from the Child, Inc. Governor Charles L. Terry, Jr. Emergency Home for Children and Youth. To do so, Ms. Clayton had to be listed as a victim on the police report and in that sense was an individual who necessarily had to "press charges" in order to secure the

2

removal of the minor Hispanic female resident from the Terry Shelter. Ms. Clayton dropped the charge after the client was removed from the shelter.

14. Plaintiff pressed charges against the white male minor resident and several hearings in Family Court were scheduled. I was subpoenaed to attend and was contacted by Jennifer Fochtman of the Delaware Attorney General's office concerning the scheduling of the hearings. I attended hearings on two (2) occasions and Pat Payne, the resident manager, attended in my place on one occasion. Each time we appeared, a host of others was required to attend, some from the Murphy School in Dover, including the white minor male resident who was restrained by plaintiff. Each time we appeared, plaintiff failed to appear and plaintiff's charges against the white minor male resident were dismissed.

15. Plaintiff never complained about the additional hours that she worked and was remunerated for them.

16. The weekly timesheets attached to Child, Inc.'s Motion for Summary Judgment, signed by plaintiff and her supervisors, accurately reflect the actual hours worked by plaintiff and for which she was paid.

*[signature]*

SWORN TO AND SUBSCRIBED before me this 25-th day of September, 2007.

*[signature]*
Notary

> DEBORAH A. PALMER-SUTTER
> NOTARY PUBLIC
> STATE OF DELAWARE
> MY COMMISSION EXPIRES
> February 01, 2009

15/527129.v1