# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIRIAM HYMAN, | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) |
| v. | )  C.A. No. 06-227-SLR |
| | ) |
| CHILD, INC., | ) |
| | ) |
| Defendant. | )  **JURY TRIAL DEMANDED** |
| | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S ANSWER TO MOTION OF DEFENDANT, CHILD, INC., FOR SUMMARY JUDGMENT

Plaintiff hereby responds to Defendant Child, Inc.'s Motion for Summary Judgment and, in support thereof, states the following:

1. Plaintiff, Miriam Hyman, is twenty-six year-old African American female. She was employed part time by Defendant from March 23, 2005 until she was terminated on June 3, 2005.

2. Plaintiff's termination was the result of racial discrimination under 42 U.S.C. §1981 in the application of her employment contract. Defendant also breached the employment contract and failed to practice the Covenant of Good Faith and Fair Dealing.

3. Pursuant to Defendant's "boiler-plate" employment contract, Plaintiff was hired to work part-time, which Defendant's contract defined as "hours not to exceed 25 hours per week." The contract provided for a six-month orientation period during which Plaintiff's performance was to be evaluated. See Exhibit "A".

4. Part-time was further defined by Defendant's "SCHEDULE POLICY – PART TIME" as "Not to Exceed hours of 25 hours per week. This may be increased or decreased based on need, but must ***never*** (emphasis added) exceed 35 hours per week." See Exhibit "B".

5. During her employment with Defendant, Plaintiff (excluding her initial week of required training) never worked less then 30 hours per week. In fact, several weeks Plaintiff worked in excess of the prohibited 35 hours per week. See Exhibit "C".

6. During her shift on May 25, 2005, a thirteen-year-old resident of Defendant assaulted Plaintiff. Plaintiff was bitten several times and due to the egregious nature of the assault, Plaintiff approached Defendant about pressing charges against the resident. Defendant unequivocally advised plaintiff that their employees did not pursue criminal charges against residents, and Defendant would not support her actions in this regard.

7. In compliance with Defendant's Schedule Policy requirement stating:

> "If a staff member would like to request to not be scheduled certain days or times (for appointments, weddings, church services, classes, etc.) but is still able to work the part-time hours for that week, at least one month's advance notice must be given. Requests should be written in the appropriate format provided by the Scheduling Coordinator. ***These requests will be taken into strong consideration***" (emphasis added)

on May 27, 2005, Plaintiff wrote a letter to her managers, Robbie MacDonna and Nicole Russo. See Exhibit "D". In her letter, Plaintiff attempted to hold Defendant to its contractual obligations with Plaintiff as a part-time employee by requesting a reassessment of her hours. Plaintiff reminded Defendant that she accepted her employment with the understanding that Defendant would be hiring another night employee to share the workload with Plaintiff. An additional employee was never hired and as a result, Plaintiff was repeatedly requested to work in excess of the hours she had been hired in violation of Defendant's policies.

8. Other than her 5/27/05 letter requesting Defendant's compliance with her part-time hours, there was no documentation in Plaintiff's employment file regarding adverse actions or any other issues.

9. Defendant illegally retaliated against plaintiff by terminating her employment in response to: 1) Plaintiff's request to file charges against the white resident who assaulted her despite the fact it supported other Caucasian employees in this regard, and 2) based upon plaintiff's request that her hours be accommodated and reassessed at a level consistent with the terms of her part-time employment.

10. A Court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of proving there is no genuine issue of any material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir.1995). With respect to summary judgment in discrimination cases, the court's role is ''to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff.'" Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987). A court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

11. The United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), set forth a three-step burden shifting analysis for Title VII employment discrimination cases. First, plaintiff must establish a *prima facia* case of discrimination. <u>Id</u>. This is done by showing that the plaintiff: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse job action; and 4) was treated differently than employees who are not members of the protected class. Whether the plaintiff has established a *prima facie* case of discrimination is a question of law for the court. <u>Sarullo v. United States Postal Service</u>, 352 F.3d 789, 798 (3d Cir. 2003).

12. Once plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. <u>McDonnell Douglas</u>, 411 U.S. at 802. If the employer meets its "relatively light" burden by articulating a legitimate reason for the employment decision, the burden shifts back to the plaintiff to show that the nondiscriminatory reason proffered by the employer was a mere pretext for racial discrimination. <u>Id</u>.

13. Plaintiff has met the first burden in the McDonnell Douglas three-step analysis by clearly establishing a *prima facie* case of discrimination as follows: 1) Plaintiff, an African-American, is a member of a protected class; 2) Plaintiff was obviously qualified for the position as she was hired by Defendant and passed all required training; 3) Plaintiff suffered an adverse job action when she was discriminatorily discharged resulting in lost wages; and 4) Plaintiff was treated differently than Caucasian employees.

14. The burden now shifts to Defendant to articulate a legitimate, nondiscriminatory reason for firing Plaintiff. <u>McDonnell Douglas</u>, 411 U.S. at 802. The Memorandum of Points and Authorities in Support of Motion of Defendant, Child, Inc., for Summary Judgment purports to articulate this reason. Defendant asserts that Plaintiff "was terminated not because of her

race but because of an accumulation of issues to the point of discharge." Defendant's
Memorandum at paragraph 7 lists a multitude of alleged actions and inactions by Plaintiff
that formed the basis for its "nondiscriminatory reason" to fire her. In reality, the majority of
Defendant's allegations against Plaintiff are contained in an Affidavit of Robbie MacDonna
Hoosty dated September 21, 2007. None of the allegations contained in the Hoosty Affidavit
are supported by documentation contained in Plaintiff's employment file. Specifically, there
is no documentation to support Hoosty's allegations that Plaintiff missed mandatory staff
meetings, or if she did she was ever disciplined as a result. Likewise, Defendant has not
presented any documents to support its allegation that "all offenses, including tardiness,
leaving early and absences were documented and recorded." Ms. Hoosty's Affidavit
contains her recollection and/or others' recollection of events that occurred well over two
years ago without the benefit of any supporting contemporaneous documentation.

15. If the Court finds that Defendant through the Affidavit of Ms. Hoosty met its burden of
articulating a legitimate reason for firing Plaintiff, which is denied, then clearly Plaintiff's
well documented evidence proves that the Defendant's nondiscriminatory reason proffered
by the employer was a mere pretext for racial discrimination. The fact that plaintiff's
termination is contemporaneous to her May 25, 2005 assault and her May 27, 2005 letter
raises a question of fact as to the discriminatory motivation for Defendants actions. For
example, why if plaintiff did in fact miss a "mandatory" staff meeting" on April 28, 2005
was it that no discipline resulted until after plaintiff's request to modify her part time hours
and after her request to press charges against her assailant.

16. The Plaintiff and Defendant voluntarily entered into a binding written contract of
employment for Plaintiff to work part-time. The contract and Defendant's Schedule Policy
clearly sets out the maximum of 25 hours per week for part time employees. Plaintiff,

without complaint, worked in excess of her contractual hours of employment until she could no longer juggle her full time day commitments with Defendant's part-time job. In compliance with Defendant's Schedule Policy, Plaintiff wrote a very amicable letter explaining her affinity for her job but her frustration with Defendant's lack of hiring another night employee to share the extra hours she was continually being asked to cover. See Exhibit "D". Plaintiff never received a response to her 5/27/05 letter. In fact the next documentation in Plaintiff's file appears to be her notice of termination dated June 3, 2005. See Exhibit "E".

17. Two days before Plaintiff's friendly letter requesting Defendant to reassess her hours, Plaintiff was viciously assaulted by a resident of Defendant. Plaintiff was bitten on both arms by a thirteen-year-old white resident on May 25, 2005 while Plaintiff was performing her work duties. The incident was so physically and emotionally upsetting, Plaintiff wanted to file charges against the perpetrator. Defendant refused Plaintiff's request as against its policies and stated it would not provide any support to Plaintiff in that regard.

18. Plaintiff was terminated on June 3, 2005. Subsequent to her termination, Plaintiff learned that a Caucasian employee of Defendant was similarly assaulted by a Latino resident. Defendant actively assisted and supported the Caucasian employee's criminal pursuit of the Latino resident. Moreover, the Caucasian employee did not suffer any adverse employment action due to her criminal pursuit.

19. The Third Circuit has stated that '[a] disparate treatment violation is made out when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated" on the basis of race. E.E. O.C. v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990). The sequence of events from the date of the assault on Plaintiff and her termination, clearly establishes that the nondiscriminatory reason proffered by the

Defendant merely a pretext for racial discrimination. Plaintiff has shown that "others not in the protected class were treated more favorably" further supporting Plaintiff's position that Defendant's nondiscriminatory reason was a mere pretext for racial discrimination. Weldon v. Kraft, 896 F.2d 793, 797 (3d Cir. 1990).

20. Based upon the foregoing, clearly Defendant has not and can not meet its burden of proving there is no genuine issue of any material fact. When this Court in reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the Plaintiff, there unequivocally exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff. Revis v. Slocomb Indus., 814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting Hankins v. Temple Univ., 829 F.2d 437, 440 (3d Cir. 1987). In the context of Summary Judgment, this Court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Therefore, it should neither weigh the allegations contained in Ms. Hootsy's Affidavit nor should the Court make credibility determinations for Ms. Hootsy's and/or Plaintiff in deciding this Motion for Summary Judgment.

21. Specifically addressing Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing, the facts clearly support Plaintiff's claims. Defendant exhibited a "take, take, take" attitude with Plaintiff. They continually "took" from her as suited their needs, but when she requested action after the assault and compliance with her part time contract, Defendant fired her. Defendants argue that Plaintiff never "chose to complain about the hours or not to work them". Plaintiff testified that she mentioned her hours regularly. See Exhibit "F". Defendant cites in its Memorandum the hours worked by Plaintiff pursuant to her timesheets dated between 3/27/05 though 6/5/05. Defendant states that except for three weeks, Plaintiff's hours were within the Scheduling Policy. Defendant conveniently cites to

the Scheduling Policy when it purportedly suits its position. In truth, the executed employment contract states "hours not to exceed 25 hours per week" and the Scheduling Policy states "Not to Exceed hours of 25 hours per week…but must **NEVER** exceed 35 hours per week." (emphasis added) See Exhibits "A" and "B". Defendant's own Memorandum admits that Plaintiff never worked less than 31.5 hours. In order to reach its "25-35" calculation, Defendant conveniently includes Plaintiff's first week of training at 12 hours and her week of termination at 8 hours when she only worked one day! Clearly, there was a breach of the express conditions of the contract by Defendant along with a breach of the covenant of good faith and fair dealing. Defendant took advantage of Plaintiff's affable demeanor and when she pushed back, Defendant terminated her based upon her race.

22. When viewed in the light most favorable to the Plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether Plaintiff's termination was the result of racial discrimination under 42 U.S.C. §1981; whether Defendant also breached the employment contract; and whether Defendant failed to practice the Covenant of Good Faith and Fair Dealing.

WHEREFORE, Plaintiff respectfully requests this Court to deny Defendant's Motion for Summary Judgment and enter the attached Order.

REILLY, JANICZEK & McDEVITT

R. Stokes Nolte, Esquire
DE Bar ID: 2301
1010 N. Bancroft Parkway
Suite 21
Wilmington, DE 19805

(302) 777-1700

DATED: October 9, 2007

**EXHIBIT A**



CHILD, INC.
507 PHILADELPHIA PIKE
WILMINGTON, DELAWARE
19809-2177
TELEPHONE (302) 762-8989
FAX: (302) 762-8963

March 22, 2005

Ms. Miriam A. Hyman
628 North 7ᵗʰ Street
Philadelphia, PA 19123

Dear Ms. Hyman:

This is to confirm that you have been appointed to the position of part-time Child/Youth Service Worker at the Governor Charles L. Terry, Jr. Emergency Home for Children and Youth effective March 23, 2005. Ms. Nicole Russo will be your supervisor and Ms. Robin MacDonna is the Director of the Emergency Home.

Your appointment is subject to the following:

- CHILD, Inc. will obtain a service letter consistent with Chapter 7, Title 19, Section 708 of the Delaware Code from current and/or former employers who you list on the service letter.

- You attest that the information given in your application/resume and service letter represents a full and complete disclosure of your current and previous employment and that all information given in the employment application/resume is true and complete to the best of your knowledge.

- Failure to provide a full and complete disclosure of all information required is a violation of subsection (9) of Section 708 and such failure shall result in civil penalties as stated in the statute. Full and complete disclosure includes listing all current and previous employers.

- CHILD, Inc. shall receive an Adult Abuse Registry check on you.

- CHILD, Inc. shall receive a Criminal Background check on you.

- CHILD, Inc. shall receive a Drivers License check on you.

- It is agreed that I, _____ have authorized a full release for CHILD, Inc. to obtain the completed service letter, Adult Abuse Registry check, Criminal Background check, Drivers License check and Child Abuse Registry check. Further, that the Adult Abuse Registry is authorized to furnish CHILD, Inc. with any information concerning me which may be on record or otherwise, and hereby release the registry and all individuals connected therewith, including the Department of Health and Social Services from all liability for any damage that may result from the dissemination of the information.

- If information is received from any of these checks, which is contrary to information that you have presented or the Department of Services For Children, Youth and Families deems that you are unsuitable to work with children because of your criminal check, you may be terminated from employment.

- It is understood that you will be required to complete HIPAA and OSHA Training by April 15, 2005.

This shall be a part-time position. Your salary will be $10.00 per hour. You will be expected to complete time sheets stating the days and hours worked. It is understood that you will work fifteen training hours, two weeks after training is complete and then become on call back-up, to work as required, hours not to exceed 25 hours per week.

CHILD, Inc. pays its employees on the 15ᵗʰ and last day of each month. After three months, you will be eligible for direct deposit of your check into your checking or savings account. The payroll is distributed from 507 Philadelphia Pike, CHILD, Inc.'s central offices.

**EXHIBIT**
HYMAN 1

BOARD OF DIRECTORS: MARTHA V. du PONT, CHAIRMAN AND PRESIDENT
DIANE MALONEY du PONT, VICE PRESIDENT / LOIS S. GALINAT, TREASURER / SADIE DeJARNETTE-BRUNSON, SECRETARY
SUZANNE du PONT POSTLEWAIT / CATHERINE D. SCHLAEPPI
JOSEPH M. DELL'OLIO  EXECUTIVE VICE-PRESIDENT

Ms. Miriam A. Hyman
March 22, 2005

CHILD, Inc.
Page 2 of 2

Since this is a part-time position, you will not be eligible for benefits such as health, dental, life insurance, short/long term disability insurance, sick or vacation leave.

You will be on orientation for a six-month period when your performance will be evaluated.

It is understood that you will complete the CHILD, Inc. Basic Parent Education Program as one criterion for fulfilling orientation. You must contact Ms. Mary Michalski at (302) 762-8989 by April 15, 2005 and *provide a copy of your certificate when classes are complete* to Human Resources.

You are expected to attend all staff meetings and training sessions as directed by your supervisor.

It is understood that you will complete the Criminal Background check by April 15, 2005, and the Physical Examination by June 1, 2005. Continued employment is contingent on results being complete on or before the above dates.

You will be responsible for receiving, recording, counseling and assigning young people who will be coming into the emergency home. Generally, your job will be to make the youngsters feel at ease and for the maintenance of their physical and emotional well-being.

You may be tested for drugs at any time. Continued employment is contingent on negative results for the drug test.

Ms. Russo and/or Ms. MacDonna will give your assignment and work schedule to you.

You have received a copy of the job description.

CHILD, Inc. is an at-will employer.

To learn more about CHILD, Inc. please visit our website at www.childinc.com, which is updated as required.

It is understood that either party may terminate this employment arrangement between the employee and the employer after fifteen (15) calendar day's notice, unless the employee is terminated for cause.

Should you have any questions regarding the terms of employment, please bring them to our attention. If you agree to the terms of this letter, please sign where indicated and return the executed copies. A signed copy of the letter will be returned to you.

On behalf of CHILD, Inc. I welcome you aboard.

Sincerely yours,

Joseph M. Dell'Olio
Executive Vice-President

3/22/05
Date

Agreed: _____
Miriam A. Hyman

JMD/clf

Enclosures

cc:   Connie L. Futty
      Human Resources Administration

GTH FT CYSW

**EXHIBIT B**

## Governor Charles L. Terry Jr., Emergency Home
## For Children and Youth

### SCHEDULE POLICY – Part-Time

Title:    Part-Time Child/Youth Service Worker

- The Child/Youth Service Worker will be scheduled Not to Exceed hours of 25 hours per week. This may be increased or decreased based on need, but must never exceed 35 hours per week.
- Schedules may vary from week to week.
- New schedules will be posted every two weeks, unless there are staffing issues. The Scheduling Coordinator would then provide updates about scheduling. During these times, please provide (in advance) the Scheduling Coordinator with information concerning your schedule availability.
- When unable to work the part-time work week, it will be necessary for leave of absence requests to be given to the office at least one month in advance, in accordance with CHILD, Inc. policy. The REQUEST FOR OR NOTIFICATION OF ABSENCE FORM *must* be completed, approved by the Director and submitted to the main office for approval by the Executive Vice President. This form *must* also be completed for training requests.
- If a staff member would like to request to not be scheduled certain days or times (for appointments, weddings, church services, classes, etc.), but is still able to work the part-time hours for that week, at least one month's advance notice *must* be given. Requests should be written in the appropriate format provided by the Scheduling Coordinator. These requests will be taken into strong consideration.
- Once the schedule is posted, staff members will be responsible for finding their own coverage, if unable to work the scheduled shift. Each staff member that is involved is to sign a SHIFT CHANGE REQUEST FORM. Then, the scheduling coordinator must approve changes.
- All schedule changes *must* be documented on the SHIFT TIME CHANGE FORM. Approval by the Resident Manager, and/or Director is necessary for ALL changes.
- Tardiness, leaving early and absences from your shift are *strongly prohibited*. All Offenses are documented and recorded.
- A CHILD, Inc. Weekly Time Sheet must be completed and turned into the Scheduling Coordinator at the end of each week, (every Sunday).
- The Child/Youth Service Worker will maintain a *sign-in/sign-out log*. The hours Should be tallied at the end of each day and at the end of each week. The workweek begins with Monday.
- The Child/Youth Service Worker position is an hourly position.

*I have read and received a copy of the above schedule policy. I understand that the Resident Manager and/or the Director will review this policy with me and answer any questions I may have.*

Signature: _____    Date: __3_/_22_/_05_____
                    Child/Youth Service Worker

GTH / Schedule Policy-PT

EXHIBIT

HYMAN 2

**EXHIBIT C**

# CHILD, Inc. - WEEKLY TIME SHEET

For ALL Hourly Workers – Including Support/Back-Up Time @ Shelters

For Week Ending: (Sunday's Date) - 6/5/05

Employee Name: Miriam Hyman

Department:

GTH / L00

Supervisor: Nicki Russo / Robbie MacDonna

| DATE | Day of Week | Morning (AM) | | Afternoon (PM) | | Additional Hours | | Total Hours | FOR NOTES and/or OFFICE USE ONLY |
|---|---|---|---|---|---|---|---|---|---|
| | | In | Out | In | Out | In | Out | | |
| 5/30/05 | Monday | 11pm | 7am | | | | | 9 | |
| | Tuesday | | | | | | | | |
| | Wednesday | | | | | | | | |
| | Thursday | | | | | | | | |
| 6/3/05 | Friday | | | | | | | | |
| 6/4/05 | Saturday | | | | | | | | |
| 6/5/05 | Sunday | | | | | | | | |
| | TOTALS: | | | | | | | | |

NOTE: Time Sheet MUST be completely filled out, hours calculated, signed by employee and completed with Authorization Signature

Employee Signature

Supervisor Authorization Signature

Payroll Notes:

Director's Signature

# GTH Weekly Time Sheet

Staff Name: _Miriam Hyman_

Title: _Child Youth Worker_    FT ☐    PT ⊙

For Week Ending: _6/5/05_

| Date | Day | Scheduled | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Notes (List reasons for being late, absent or any other changes to your schedule) |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/30/05 | Mon | D to be paid | SI | 11:01pm | 7:01 | | | | | |
| | Tue | | | | | | | | | |
| | Wed | | | | | | | | | |
| | Thurs | | | | | | | | | |
| 6/3/05 | Fri | | | | | | | | | |
| 6/4/05 | Sat | | | | | | | | | |
| 6/5/05 | Sun | | | | | | | | | |
| Totals | | | | | | | | | | |

Reviewed by _____    Date _____

Employee Signature _____    Date _____

Notes (Office Use Only):

_____
_____
_____

# GTH Weekly Time Sheet

Staff Name: Miriam Hyman

Title: Child Youth Worker  FT  (PT)

For Week Ending: 5 / 29 / 05

| Date | Day | Scheduled | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Notes (List reasons for being late, absent or any other changes to your schedule) |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/23/05 | Mon | | | | | | | | | |
| 5/24/05 | Tue | (Handwritten) | 10 | 10 pm | 8:01 am | | | 10 | | |
| 5/25/05 | Wed | | 10 | 10 pm | 8 AM | | | 10 | | |
| 5/26/05 | Thurs | | 10 | 10 pm | 7 AM | | | 10 | | |
| 5/27/05 | Fri | | 10 | 9 pm | 7 AM | | | 10 | | |
| | Sat | | | | | | | | | |
| | Sun | | | | | | | | | |
| Totals | | | | | | | | | | |

Reviewed by _____    Date _____

Notes (Office Use Only): _____

Employee Signature _____  5/27/05  Date

Date _____

# GTH Weekly Time Sheet

For Week Ending: 5 / 22 / 05

Staff Name: Miriam Hyman
Title: Child Youth Worker  FT  (PT)

| Date | Day | Scheduled | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Notes (List reasons for being late, absent or any other changes to your schedule) |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/16/05 | Mon | | 8 | 9am | 12pm | 4pm | 7am | 11 | | Staff meeting |
| | Tue | | | | | | | | | |
| | Wed | | | | | | | | | |
| | Thurs | | | | | | | | | |
| 5/20/05 | Fri | | 15 | 11pm | 10:30a | | | 15 | | |
| 5/21/05 | Sat | | 11 | 10:30pm | 9:35a | | | 11 | | |
| 5/22/05 | Sun | | 9 | 10:00pm | 7am | | | 9 | | |
| Totals | | | 39 | | | | | 46 | | |

Reviewed by _____    Date _____

Employee Signature _____    Date 5/22/05

Notes (Office Use Only):

# GTH Weekly Time Sheet

Staff Name: Miriam Hyman

Title: Child Youth Worker   FT ___  (PT)

For Week Ending: 5/15/05

| Date | Day | Scheduled | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Notes (List reasons for being late, absent or any other changes to your schedule) |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/10/05 | Tue | 11 pm to 9AM | 10 | 11pm | 9AM | | | | | |
| 5/11/05 | Wed | 9AM to the same | 10 | 9pm | 8:10A | 9AM | 12pm | 13 | | Staff Meeting |
| 5/12/05 | Thurs | 10pm to 8:00 am | 10 | 10pm | 8 A | | | 10 | | |
| | Fri | | | | | | | | | |
| | Sat | | | | | | | | | |
| | Sun | | | | | | | 33 | | |
| Totals | | | | | | | | | | |

Reviewed by: _Kathleen Payne_   Date: _5/17/05_

Employee Signature: _____   Date: _____

Notes (Office Use Only):

**GTH Weekly Time Sheet**

Staff Name: Miriam Hyman

Title: Child Youth Worker    FT    ~~PT~~

For Week Ending: 5/8/05

| Date | Day | Scheduled | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Notes (List reasons for being late, absent or any other changes to your schedule) |
|------|-----|-----------|-----------------|-----|-----|-----|-----|--------------|------------------------------|------------------------------------------------------------------------------------|
| 5/2/05 | Mon | | 8 | 11pm | 7pm 8am | | | 8 | | |
| 5/3/05 | Tue | | 10 | 11pm | 8:55 | | | 10 | | |
| 5/4/05 | Wed | | 10 | 10pm | 8am | | | 10 | | |
| 5/5/05 | Thurs | | 10 | 8-8pm 10pm | 8-8pm 8am 10pm | | | 10 | | Switched times with staff because of early engagement |
| | Fri | | | | | | | | | |
| | Sat | | | | | | | | | |
| 5/8/05 | Sun | | | | | | | | | |
| Totals | | | 38 | | | | | 38 | | |

Reviewed by _____  Date 6/17/05

Employee Signature _____  Date 5/5/05

Notes (Office Use Only):

# GTH Weekly Time Sheet

Staff Name: _Miriam Hyman_

Title: _Child Youth Worker_  FT  (PT)

For Week Ending: _5/1/05_

| Date | Day | Scheduled | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Notes (List reasons for being late, absent or any other changes to your schedule) |
|------|-----|-----------|-----------------|----|----|----|----|--------------|-----------------------------|-------|
| | Mon | | | | | | | | | |
| 4/26/05 | Tue | | | 8:30a | | | | | | |
| 4/27/05 | Wed | 10 | 10 pm | 10 pm | 6:15a | 9am | 10:45a | 10.5 | | |
| 4/28/05 | Thurs | | | 8 pm | 6:15a | | | 10.75 | | Staff meeting |
| 4/29/05 | Fri | | | 8 pm | 6:50 pm | | | | | |
| | Sat | | | | | | | | | |
| | Sun | | | | | | | | 31.75 | |
| Totals | | | | | | | | | | |

Reviewed by _Patricia Payne_ 5/17/05
Date

Employee Signature _____ 4/29/05
Date

Notes (Office Use Only):

**GTH Weekly Time Sheet**

Employee Name: M.erah Hyman
Dept. __GTH__    Title: Child Youth worker    FT (PT)

For Week Ending: __4/24/05__
Exemptions: _____

| Date | Day | Scheduled Times | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Late Form Submitted? | Notes (Office Use Only) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/18/05 | Mon. | 11pm to 7am | 8 | 11pm | 7am | | | 8 | | | |
| 4/19/05 | Tue. | to | | | | | | | | | |
| 4/20/05 | Wed | to | | | | | | | | | |
| 4/21/05 | Thurs | to | | | | | | | | | |
| 4/22/05 | Fri | 10:30m to 7am | 11.5 | 11pm | 10:30a | | | 11.5 | | | |
| 4/23/05 | Sat | 1:30 9:30 | 11 | 10:30pm | 9:30a | | | 11 | | | |
| 4/24/05 | Sun | 10pm to 7am | 9 | 10pm | 7am | | | 9 | | | |
| Totals | | | 39.5 | | | | | 39.5 | | | |

Authorization Signatures

_Patricia Floyd 4/27/05_

Employee Signature

_____

Payroll Notes (Office Use Only):

Total Back Up Time [ ]

Employee Name: _Miriam Hyman_
Dept. _GTH_ Title: _Child/Youth worker/PT (PT)_

GTH Weekly Time Sheet
For Week Ending: _4/17/05_
Exemptions:

| Date | Day | Scheduled Times | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Late Form Submitted? | Notes (Office Use Only) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4/11/05 | Mon | 10pm to 8am | 10 | 9 AM | 11:30am | | | 13 | | | Staff meeting |
| 4/12/05 | Tue | 10pm to 8am | 10 | 10 PM | 8 AM | | | | | | |
| 4/13/05 | Wed | 10 pm to 8 am | 10 | 10 PM | 8 AM | | | 10 | | | Staff meeting |
| 4/14/05 | Thurs | to | | | | 12:00am | | 10 | | | |
| 4/15/05 | Fri | 10PM to 8AM | 10 | 1 AM | | | | | | | Staff meeting |
| | Sat | to | | | | | | | | | |
| | Sun | | | | | | | | | | |
| Totals | | | 30 | | | | | 33 | | | |

Authorization Signatures

_Patricia Payne_    4/15/05

Payroll Notes (Office Use Only):

_[signature]_
Employee Signature

_____ Total Back Up Time  [  ]

# GTH Weekly Time Sheet

Employee Name: Miriam Hyman

Dept. __GTH__  Title: __Child Youth worker__  FT/PT (PT)

For Week Ending: __4/10/05__

Exemptions: _____

| Date | Day | Scheduled Times | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Late Form Submitted? | Notes (Office Use Only) |
|------|-----|-----------------|-----------------|-----|-----|-----|-----|-------------|------------------------------|----------------------|--------------------------|
| | Mon | 6 | | | | | | | | | |
| | Tue | 6 | | | | | | | | | |
| | Wed | 6 | | | | | | | | | |
| | Thurs | | | | | | | | | | |
| 4/8/05 | Fri | 11p to 8:30a | 11.5 | 9pM | 8:30a | | | 11.5 | | | |
| 4/9/05 | Sat | 10:30a to 8p | 11 | 10:30p | 9:30A | | | 11 | | | |
| 4/10/05 | Sun | 9p to 7A | 9 | 10p | 7A | | | 9 | | | |
| Totals | | | 31.5 | | | | | 31.5 | | | |

Authorization Signatures

_Patricia Payne_ 4/15/05

Employee Signature _____

Payroll Notes (Office Use Only):

Total Back Up Time [ ]

# GTH Weekly Time Sheet

Employee Name: Miriam Human
Dept. GTH    Title: Child youth worker    FT/PT (PT)

For Week Ending: 4/3/06
Exemptions:

| Date | Day | Scheduled Times | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Late Form Submitted? | Notes (Office Use Only) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Sun | | | | | | | | | | |
| | Mon | 11am to 9pm | 10 | 11am | 12pm | | | 13 | | | Staff meeting |
| 3/28/06 | Tue | to | | | | | | | | | |
| 3/29/06 | Wed | 10pm to 8am | 10 | 10pm | 8:10am | | | 10 | | | |
| 3/30/06 | Thurs | 10pm to 8am | 10 | 10pm | 8am | | | 10 | | | |
| 3/31/06 | Fri | | | 9:70pm | 8am | | | 10 | | | |
| | Sat | | | | | | | | | | |
| Totals | | | 30 | | | | | 33 | | | |

Authorization Signatures

_Patricia Payne_  4/18/06

Employee Signature
_[signature]_

Payroll Notes (Office Use Only):

Total Back Up Time [ ]

GTH Weekly Time Sheet

Employee Name: Miriam Hyman
Dept. GTH  Title: Childcare Worker  FT/PT

For Week Ending: 3 / 27 /05
Exemptions:

| Date | Day | Scheduled Times | Hours Scheduled | In | Out | In | Out | Hours Worked | Leave of Absence Submitted? | Late Form Submitted? | Notes (Office Use Only) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Mon. | to | | | | | | | | | |
| | Tue | to | | | | | | | | | |
| | Wed | to | | | | | | | | | |
| | Thurs | to | | | | | | | | | |
| 3/6/05 3:35:06 | Fri | Gue to 12pm 11am 8am | 3 | 9am | 12:5pm | | | 3.25 | | | |
| | Sat | 9 | | 11pm | 8:00pm | | | 9 | | | |
| | Sun | | | | | | | | | | |
| Totals | | | 12 | | | | | 12.25 | | | |

Payroll Notes (Office Use Only):

Authorization Signatures

_Patricia Payne_    4/15/05

~~~~~~ 
Employee Signature

Total Back Up Time

**EXHIBIT D**

5/27/05
Governor Terry Home
700 C River Road
Wilmington, DE 19809
Attn: Director, Robbie MacDonna and Manager, Nicole Russo

Hello ladies! It is almost production time for me and I wanted to give you both an early update. Prior to being hired at Gov. Terry I was offered a role in Merchant of Venice in Center Valley, Pa ( about 45 mins to an hour from Phila). One of the main reasons I wanted this job other then assisting troubled youth was because it would allow me to perform full time and teach during the day. At the time of hire I was told that there would be two individuals at night and that I would be doing between 6 to 8 hours a night ex. 12am-6am or 11pm-7am. I am hoping that that will soon happen because when told that I realized that I could really make these productions work. Let me get right to it. I would need to be scheduled similar to the hours above for about roughly from July 1 –Aug 6. The production runs from June 28th - Aug. 7th. We will rehearse beginning at 9:30 am in Center Valley and I would be living there during this time. So on certain days I would need to leave in the morning no later than 7am or arrive no earlier than @ 12am It sounds confusing but I hoping this can work out because I really like this job.

On the nights of July 1, 2, 5, 6, 7, and the11th I can come in regular time 10pm-11pm whether the full time position had been filled or not, but I would need to leave no later then 7am.
Tech rehearsal
On thee nights of I can't come in at all July 15, 16, 17, and 19 I am in tech rehearsal from 11am-11pm
Performance days and some crazy rehearsals
On the nights of July 3, 20, 21, 29, 30, 31, and August 2, 3, 4. I would need to come in @12am and I could leave at regular time between 7am-9am on the following morning and then no later then 10:30 am on sat and sun, which I have been doing anyway. Also I believe there are two staff meetings somewhere in here that I would be unable to attend due to rehearsal. After those dates I am free again.

I realize this is a lot and I have two suggestions because I don't wish to leave you hanging:
1. Day shift can be 2pm-12am instead of 1pm-11pm just for that time period ( Adrianne came up with this one)

2. A second night staff could just be added like discussed and I would come in after they came on and assist and then leave before they did.

3. My hours could be reduced to about 20 hrs because of all the travel until I am finished with this show.
Whew! Please let me know what you think. I eagerly await your response. Thanks

EXHIBIT

HYMAN 5

**EXHIBIT E**



CHILD, INC.
507 PHILADELPHIA PIKE
WILMINGTON DELAWARE
19809-2177
TELEPHONE (302) 762-8989
FAX: (302) 762-8983

June 3, 2005

Ms. Miriam A. Hyman
1825 S 23Rd Street
Sigel Side Entrance
Philadelphia, PA 19145

Dear Ms. Hyman:

This is to confirm that you have been discharged from the employment of CHILD, Inc. effective immediately.

Consistent with your letter of appointment dated March 22, 2005 this will serve as your fifteen days notice and are being renumerated accordingly.

The enclosed check, number 5489, represents the period from 5/16/05 through 6/17/05. This includes time worked, 80.5 hours, plus notice.

We wish you success as you pursue your career goals.

Sincerely yours,

Joseph M. Dell'Olio
Executive Vice President

JMD/clf

cc:    Connie L. Futty
       Human Resources Administrator

**EXHIBIT F**

Miriam Hyman

Page 20

1        A.    Yes.

2        Q.    And there were times when you did work between

3   25 and 35 hours per week?

4        A.    Several times, yes.

5        Q.    And on those occasions, did you make any

6   complaints to Child Inc. about working between 25 and 35

7   hours per week?

8        A.    I spoke with them a few times actually about

9   working over the amount of hours that we discussed.

10        Q.    Who did you have these discussions with and

11   when?

12        A.    It would vary. As I stated before, sometimes,

13   you know, Ms. Pat was available, sometimes Nicki was

14   available, sometimes Robbie was available.  And based on

15   once I received what my hours would be for that week, I

16   would take a mental note and then, you know, communicate

17   to whoever was available this is past a certain amount of

18   hours.  But they assured me that they were working

19   towards hiring and they were, in fact, interviewing other

20   individuals but that they just needed that help for right

21   now.  So I agreed to help during that time.

22        Q.    For any of the weeks -- and I think you have

23   actually supplied some time sheets?

24        A.    Yes.

Miriam Hyman

Page 21

1      Q.   And they showed different amounts of hours

2   worked for different weeks.  Some less than 20?

3      A.   Yes.

4      Q.   Some between 20 and 25, some between 25 and

5   35, and a few over 35, I believe?

6      A.   Yes.

7      Q.   When you worked those hours, did you work them

8   voluntarily?

9      A.   Well, for the first few weeks, I worked under

10   15 hours, only for about two to three weeks.

11      Q.   Why was that?

12      A.   That was during like the training period.

13      Q.   Okay.

14      A.   After that, I never worked under 30 hours, and

15   then it would exceed to about I think 42.5 one time was

16   the most that I worked.  Again, I agreed to work those

17   hours during that time because I was not in production at

18   that time.  And I stated, I would constantly, you know,

19   ask when there was going to be another individual brought

20   on.  They were still in the process of hiring, but that I

21   agreed to work those hours just for a short period of

22   time.  That was not supposed to be a long time period

23   when I was working those amount of hours every week.

24      Q.   You received a paystub for the hours that you